DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Chillicothe Municipal Court which found appellant guilty of operating a motor vehicle while intoxicated (O.M.V.I.), in violation of R.C.4511.19(A)(3). Appellant appeals from the denial of his motion to suppress the results of a breath test performed on him on the night of his arrest.
 Statement of the Case
On February 27, 1998, appellant Christopher Dunn was driving westbound on U.S. Route 50 in Ross County when a trooper of the Ohio State Highway Patrol stopped him. The trooper cited appellant for driving left of center, operating a vehicle under the influence of alcohol and operating a vehicle with a breath-alcohol content in excess of the legal limit. Appellant moved to suppress the results of his breath-alcohol content test, arguing that the batch of testing solution used to calibrate the BAC Datamaster breath-testing machine was not properly tested and, therefore, unreliable. The trial court overruled appellant's motion on September 25, 1998. On November 19, 1998, appellant pled no contest to the O.M.V.I. charge. The state dismissed the other two charges against the appellant. The trial court found him guilty and sentenced him accordingly. This timely appeal followed.
Appellant asserts one assignment of error:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF HIS CHEMICAL BREATH TEST.
 Opinion
Appellant moved to suppress the breath-alcohol test obtained from a BAC Datamaster calibrated with an ethyl alcohol sample solution certified by the Director of the Ohio Department of Health. That sample was from Batch or Lot No. 97220. The trial court overruled his motion. We affirm the trial court's decision, and adopt the reasoning of State v. Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported.
In Miller, the defendant moved to suppress her breath-alcohol test on the basis that the Director of the Ohio Department of Health had improperly certified the calibration sample obtained from this same batch, No. 97220. That appellate court disagreed and affirmed the ruling of the trial court.
In the case at bar, the appellant's motion to suppress was consolidated with other cases presenting the same calibration issue; and, at hearing, the parties stipulated to the evidence that would be used to decide these issues. Generally, the admissibility of breath test results depends on whether the state substantially complied with the regulations promulgated by the Ohio Department of Health (hereinafter "ODH"). See Ohio Adm. Code3701-53-04; State v. Plummer (1986), 22 Ohio St.3d 292,490 N.E.2d 902; and Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3,573 N.E.2d 32, 34.
On the night of appellant's arrest, the Ohio State Highway Patrol performed a breath test on him. The BAC Datamaster machine indicated appellant's breath sample exceeded the legal limit, finding .164 grams of alcohol per 210 liters of breath. Appellant's motion to suppress attacks the procedure used by the Director of Health to certify or approve that batch of ethyl alcohol solution used to calibrate the machine that tested his breath.
According to Ohio Adm. Code 3701-53-04(A), a breath testing machine must be calibrated "no less frequently than once every seven days in accordance with the appropriate instrument checklist * * *." The regulation further provides that "an instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health." (Emphasis added.) See Ohio Adm. Code 3701-53-04(A)(4). The calibration solution contains a known concentration of alcohol referred to as a "target value." When used in the breath testing machine, the calibration solution should produce a readout equal to the "target value" of alcohol per 210 liters of breath, plus or minus .005 per cent. The Director of Health issues a certificate for each batch of calibration solution distributed to the agencies, certifying the accuracy of that solution. If a breath-testing machine processes the solution and produces a result that is too high or too low, the agency must take that machine out of service. See Ohio Adm. Code 3701-53-04(A)(1).
In the fall of 1997, the Marietta Municipal Court suppressed the results of a number of blood-alcohol tests on the basis that the Director of Health's approval of the calibration solution was untrustworthy. State v. Beardsley (Oct. 24, 1997), Marietta M.C. No. 97TRC4176, unreported. The Marietta court discovered that the Director of Health did not independently test the batches of calibration solution, but instead relied upon the manufacturer's certification of the alcohol content of each batch. Further, upon subsequent testing of the check solution, that particular batch solution was found not to comply with the acceptable standards, or "target value" of the ODH.
As we noted, the trial court consolidated the appellant's motion to dismiss with other similar motions. The trial court, with the agreement of the parties, admitted the stipulated deposition testimony of Dr. Craig Sutheimer, Deputy Director of the ODH. In appellant's case, the BAC Datamaster used to test his breath was calibrated with alcohol solution identified as Batch No. 97220, manufactured by Steifel, and sold to ODH by Guth Laboratories. From the deposition, we learn that the manufacturer repackaged each batch of solution into small bottles before shipment. At the time of acceptance and certification of Batch No. 97220, the manufacturer tested three bottles out of each batch. Biostatisticians hired by ODH determined that, to be statistically acceptable, the manufacturer or ODH needed to test a higher number of bottles out of each batch. They determined that six to eight bottles per batch would be acceptable. Dr. Sutheimer subsequently required that ten bottles out of previously certified Batch No. 97220 be tested. These test results supported the original values certified by the manufacturer and indicated that this value was clearly within the range acceptable to the ODH for such check solutions.
Appellant argues that the Director of Health for the ODH abused his discretion by retroactively certifying the alcohol content of certain batches of ethyl alcohol solution using data produced after the original certification.
The General Assembly gave broad power to the Director of Health to determine methods for alcohol testing. R.C. 3701.143 states:
 For purposes of section 4511.19 of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director.
R.C. 3701.143 clearly vests all authority relative to determining the techniques and methods of chemically analyzing the alcohol content in a person's blood, urine and breath for purposes of R.C. 4511.19, in the Director of Health. However, the only requirement imposed upon the Director of Health regarding the calibration solution used in breath testing machines is that the director "approve" the solution. Ohio Adm. Code 3701-58-04
(A)(1). While it is the director's obligation to approve the "target value" of the alcohol content of the solution pursuant to regulation, there is no regulation concerning how the director is to scientifically establish or verify that target value. Since there is no such set standard, we begin our review of the director's decision with the presumption that the decisions made by directors of governmental agencies are reasonable. The appellant must demonstrate that the director lacked a reasonable factual basis for his decision. See Youngstown Sheet Tube Co.v. Maynard (1984), 22 Ohio App.3d 3, 8, 488 N.E.2d 220, 225.
The initial decision of the Director of Health to approve batches of calibration solution was not an abuse of discretion. Once it became apparent that the manufacturers were not testing a statistically significant number of bottles to support their certificates of approval, the director then had a duty to either perform his own independent tests to establish "target value" accuracy of the batch of solution in question, or to revoke the batch approval certificate and remove it from use, as nonconforming with ODH regulations.
The evidence in this case reveals that the ODH did perform a subsequent investigation. Because of that investigation, ODH required the manufacturers to conduct additional testing, in accordance with approved scientific methods, in order to ensure the accuracy of the "target values" assigned to the solution batches at issue. Subsequent testing of Batch No. 97220 established that the original "approved" batch solution certificates issued by the Director had correct "target values" and were within limits promulgated by the ODH.
Applying our analysis to the case at hand, appellant's breath-alcohol test produced the readout of .164 grams of alcohol per 210 liters of breath. The machine that produced this readout had been timely calibrated, using a solution of ethyl alcohol from Batch No. 97220. Subsequent testing of this batch of solution demonstrated that the solution contained the amount of alcohol certified by the Director of Health in his certificate of approval. Thus, appellant has suffered no prejudice which would require the suppression of his breath test results.
We find that the court below acted properly in denying appellant' motion to suppress. Accordingly, appellant's sole assignment of error is OVERRULED.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed, and that the appellee recover of the appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Chillicothe Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall earlier terminate if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Harsha, J.: Concur in Judgment and Opinion.
For the Court
 By: __________________________ David T. Evans, Judge